## APPEAL OF OSAGE STEAMSHIP CO., LTD.

Docket No. 3396.   Submitted September 24, 1925.   Decided November 24, 1925.

> Ordinary and necessary repairs in the operation of a vessel are not required to be capitalized merely because they were made soon after the acquisition thereof.

*Henry P. Molloy*, Esq., for the taxpayer.
*R. P. Smith*, Esq., for the Commissioner.

### Before GRAUPNER and TRAMMELL.

This is an appeal from the determination of a deficiency in income and profits taxes for the fiscal year ended April 30, 1921, in the amount of $17,442.94, of which approximately $10,572.21 is in dispute. The deficiency arises on account of the disallowance by the Commissioner of a deduction claimed by the taxpayer as expense, the Commissioner taking the position that the expenditure was not an ordinary and necessary expense but that it was a capital expenditure.

#### FINDINGS OF FACT.

The taxpayer is a corporation organized under the laws of Delaware on February 2, 1920. On May 1, 1920, it acquired the *S. S. Osage*. It was announced that the vessel would engage in trade on that date. She was then in her loading berth at a pier at the foot of Thirty-third Street, Brooklyn, N. Y., and began receiving and loading cargo. She was taking on merchandise for Finland and Sweden and it was contemplated that the voyage would take about four months.

The vessel was acquired from the Shipping Board and had been operated for about 12 months. While she was being loaded for her first voyage after the taxpayer acquired it, the taxpayer determined to have certain repairs made. The Cosmopolitan Iron Works, Inc., was employed to make the repairs and, on May 28, 1920, it submitted an itemized statement of the work done and material furnished, together with a statement of the cost thereof, from which it appears that the work in the engine department consisted in straightening crank shaft, trueing up journals, adjusting air pumps, tightening up various connections, reseating valves and other similar work in the engine room. In doing this work some items of new material were furnished, such as piston rod packing, valve stem placing, small pieces of pipe, valve stems, pipe hangers and other necessary materials. The cost of doing the work in the engine room was the principal part of the expense. In the deck department the work consisted of repairing the refitting hatches, removing certain broken cement on hatches and replacing

with new cement, repairing fire bell alarm system, repairing railings, and other items of a similar nature. In the steward's department gratings were repaired and renewed where necessary, pots and pans were retinned, store room bulkhead was tightened, coffee urn repaired, galley range was overhauled and rebricked, steam tables retinned, and other work of a similar character was done.

Before beginning to load and before any repairs were made to the vessel, it was inspected and a certificate of inspection was duly issued by the Steamboat Service of the Department of Commerce. The certificate was dated December 17, 1919, and was effective for a period of 12 months from that date. The vessel was classified by the American Bureau of Shipping as class A–1.

The vessel was in a seaworthy condition and the repairs which were made were not necessary to enable it to proceed on the voyage. They were not required by either the insurance bureaus or the United States Steamboat Inspection Service. The New York Board of Underwriters had surveyed the vessel and issued a certificate which entitled it to load its cargo. Certain members of the United States Board of Underwriters carried insurance on the cargo of the vessel. No report was made to a United States inspector of the repairs made on the vessel, and no authority was secured or requested by the taxpayer of the inspector of steamboats to make such repairs. It was not necessary to obtain authority to make ordinary and customary repairs to maintain a vessel in ordinary efficiency of operation. The repairs were of such a nature that they could have been made at any time, but it was not essential that they be made at the time they were made.

The expenditures were for ordinary and customary repairs, which were not betterments or replacements. They were necessary in order to maintain the vessel in good condition, but were not additions or structural improvements.

### DECISION.

The deficiency should be computed in accordance with the following opinion. Final determination will be settled on 10 days' notice, in accordance with Rule 50.

### OPINION.

TRAMMELL: The question presented is whether the expenditure for the repairs, which are set out in detail in the findings of fact, is an ordinary and necessary expense or is a capital expenditure and therefore not deductible in determining net income.

We are convinced from the evidence that the repairs in question were not of a structural nature and were no more than ordinary repairs. It was not necessary that the repairs be made in order to

make the vessel seaworthy. It had been surveyed and inspected by proper authorities, who had determined that it was seaworthy and entitled to load its cargo for shipment. The insurance companies accepted the vessel as being seaworthy and issued insurance upon the cargo. The repairs which were made could have been made at a later date and it was not essential that they be made at the particular time while the vessel was loading or prior to its sailing. But it is contended by the Commissioner that, when property which has been acquired is very shortly thereafter extensively repaired, the expenditures should be considered as a capital investment, even though they might be considered as ordinary and necessary expenses if the repairs had not been made immediately after acquisition of the property. Repairs which are admittedly ordinary and necessary in the operation of a vessel are not required to be added to the capital investment merely because they were made soon after the acquisition thereof.